CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 NOV 13   AM 11: 59

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| KOURTNEY D. KAMA,<br>Prisoner ID # 55320-066, | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 1:14-CV-201-BL |
| | § | |
| MYRON L. BATTS, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |
| | § | Assigned to U.S. Magistrate Judge |

### REPORT AND RECOMMENDATION

Plaintiff Kourtney Kama ("Kama"), proceeding *pro se* and *in forma pauperis*, filed a civil rights action pursuant to 42 U.S.C. § 1983 on December 29, 2014. (Doc. 1). He alleges that prison officials at the Federal Correctional Institution in Big Spring, Texas ("FCI Big Spring") were deliberately indifferent to his serious medical needs. Kama has not consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7).

On October 2, 2015, this Court ordered Kama to complete a questionnaire to assist in developing the issues that form the basis of his complaint. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976). On October 13, 2015, Kama returned his answers to the questionnaire. (Doc. 11).

### I. BACKGROUND

#### A. Claim One: Injured right hand and wrist

Kama claims that on August 7, 2013, he was assaulted by a "group of Hispanic inmates during a race riot" at FCI Big Spring. (Doc. 1, p. 6). Kama claims that the prison was segregated by race and "locked down" once the riot was quelled. (Doc. 1, p. 6). Kama reports that this

meant "no inmate movement" for several weeks. (Doc. 1, p. 6). As a result of the riot, Kama claims that his right hand and wrist were severely injured. (Doc. 1, p. 6).

Kama claims that he first reported the injury to "Mr. Alvarez," a mid-level healthcare provider at FCI Big Spring, on August 8, 2013. (Doc. 1, p. 6). Kama writes that this report was made during Defendant Alvarez's "pill line tour" of his unit. (Doc. 1, p. 6). Kama explains that since the prison was locked down, staff members had to deliver medications to inmates as needed. (Doc. 1, p. 6). Further, Kama clarifies that he was not able to submit a "sick call" request due to the lockdown. (Doc. 1, p. 6). Kama claims that Defendant Alvarez refused to address Kama's injury because "there was not any staff available to escort [Kama] to health service[s]." (Doc. 1, p. 6).

Next, Kama reports that he made the same report to Mrs. Parsons, a medical staffer at FCI Big Spring, during "pill line delivery" on August 9, 2013.[1] (Doc. 1, p. 6). Kama states that Mrs. Parson told him there was nothing she could do to help his injury, but that she did provide him with Ibuprofen. (Doc. 1, p. 6). Kama claims that he reported his injury to an unnamed prison employee on August 10, 2013, while being escorted to the Special Housing Unit ("SHU"). (Doc. 1, p. 7).

Kama relays that he reported his injury on August 11, 2013, to Lt. Anderson, who reported the injury to health services.[2] Kama states that Lt. Anderson asked that someone come to the SHU to treat his injuries, but that no one ever came. (Doc. 1, p. 7).

Kama claims that he encountered Mrs. Parsons again on August 12, 2013, while being escorted to the shower. He states that he reminded her of his injury and she replied that she did

---

[1] Kama does not name Mrs. Parsons as a defendant in this lawsuit.
[2] Kama does not name Lt. Anderson as a defendant in this lawsuit.

not have time (to address his complaint). (Doc. 1, p. 7). Kama advises that Mrs. Parsons told him

to submit a sick call request. (Doc. 1, p. 7). Kama stated that he submitted sick call requests on

August 13th and August 16th. (Doc. 1, p. 11).

Kama reports that on August 20, 2013, he asked Mrs. Rodriguez, a physician's assistant,

about his sick call requests during the pill line delivery.[3] (Doc. 1, p. 7). He writes that Mrs.

Rodriguez said, "You should have been seen by now. Your hand looks broken." (Doc. 1, p. 7).

Kama claims that Defendant Alvarez was present during this encounter and told him that he did

not have time to exam him at that time. (Doc. 1, p. 7). Kama advises that Defendant Alvarez told

him that someone would see him soon. (Doc. 1, p. 7). Kama reports that he waited several days

and then initiated the administrative remedy process on August 28, 2013. (Doc. 1, p. 12). Kama

complains that he made five verbal requests and submitted three sick call forms requesting

medical attention for his injured hand. (Doc. 1, p. 7). Kama reports that it was only after he

started the administrative remedy process that he received medical treatment. (Doc. 1, p. 7).

Kama claims that he asked Mrs. Wilborne, a medical staffer at FCI Big Spring, about his

pending sick call requests on August 30, 2013.[4] (Doc. 1, p. 12). Kama relays that Mrs. Wilborne

told him that she had been away from work and she would look into his situation. (Doc. 1, p. 12).

Kama writes that he spoke to Mrs. Wilborne again on August 31, 2013, and she told him that she

saw his two previous sick call requests. (Doc. 1, p. 12). Kama advises that Mrs. Wilborne told

him to complete another sick call request and that she would personally deliver it to Defendant

Alvarez. (Doc. 1, p. 12).

---

[3] Kama does not name Mrs. Rodriguez as a defendant in this lawsuit.
[4] Kama does not name Mrs. Wilborne as a defendant in this lawsuit.

3

Kama claims that on September 3, 2013, he again reported his injury to Defendant Alvarez during pill line delivery. (Doc. 1, p. 12). Kama claims that Defendant Alvarez told him that he did not have time to examine him and to be patient because someone would see him soon. (Doc. 1, p. 13). Kama claims that he saw Defendant Alvarez on September 5, 2013, and made the same complaint. (Doc. 1, p. 13).

Kama reports that on September 9, 2013, unnamed medical staff finally came to the SHU and took x-rays of his injured right hand. (Doc. 1, p. 13). Kama stated that he encountered Defendant Alvarez in the SHU that same date and asked for pain medication and the results of his x-rays. (Doc. 1, p. 13). Kama adds that Defendant Alvarez told him that the results were not yet known. (Doc. 1, p. 13).

Kama explains that Defendant Alvarez fitted him for a brace for his hand and wrist on September 10, 2013. (Doc. 1, p. 14). Kama claims that his hand had been "badly fractured" and that Defendant Alvarez told him that he would need to see a specialist. (Doc. 1, p. 14).

Kama reports that he spoke to Mr. Alexander during the pill line delivery on September 11, 2013.[5] (Doc. 1, p. 14). Kama adds that Mr. Alexander told Kama that his hand had been broken in three places, but that it was beginning to heal. (Doc. 1, p. 14). Kama relays that he told Mr. Alexander that he wished to see a specialist about his injured hand. (Doc. 1, p. 14).

On September 23, 2013, Kama submitted an administrative remedy complaint to FCI Big Spring administration. (Doc. 1, p. 15). The administrative remedy was ultimately denied by Defendant Warden Myron Batts on October 15, 2013. (Doc. 1, p. 15). In his reply, Defendant Batts reports that—despite Kama's claims—health services only received two sick calls requests

---

[5] Kama does not name Mr. Alexander as a defendant in this lawsuit.

4

from Kama; August 30, 2013, and September 5, 2013. (Doc. 1, p. 15). Defendant Batts writes that Kama was examined by a mid-level provider on September 5, 2013, and x-rays were taken on September 9, 2013. (Doc. 1, p. 15). Defendant Batts confirms that Kama had two fractured fingers, mild swelling, and tenderness in his right hand. (Doc. 1, p. 15). Even so, Defendant Batts notes that Kama had full range of motion in his injured hand. (Doc. 1, p. 15). Defendant Batts explains that Kama was prescribed a splint for his hand, but was later found not using the splint as required. (Doc. 1, p. 15). Defendant Batts concluded that additional x-rays were scheduled to occur with two weeks of his decision and that the clinical director had determined that consultation with a specialist was not presently warranted. (Doc. 1, p. 15).

On October 20, 2013, Kama appealed Defendant Batts' decision through a regional administrative remedy appeal. (Doc. 1, p. 16). Kama's regional appeal was denied on December 27, 2013, for many of the same reasons listed by Defendant Batts. (Doc. 1, p. 16). Kama followed up with a central office appeal which was also denied. (Doc. 1, p. 20-24).

## B. Claim Two: Lower back injury

Kama claims that on January 15, 2014, he injured his lower back as a result of falling from a faulty table seat at FCI Big Spring. (Doc. 1, p. 25). Kama reports that another inmate, Ramon Ordonez, reported the unsafe seat to correctional staff on December 19, 2013. (Doc. 1, p. 25). Nevertheless, Kama claims that he was put in the cell with the unsafe seat that ultimately led to his injuries. (Doc. 1, p. 25).

Kama writes that x-rays, taken on January 16, 2014, revealed no bone damage. (Doc. 1, p. 25). He avers that he suffered severe pain and limited mobility as a result of the fall. (Doc. 1, p. 25). Kama claims that Defendant Acosta, a medical staffer at FCI Big Spring, informed him

5

that he could have muscle or nerve damage. (Doc. 1, p. 25). Kama explains that Defendant Acosta told him to submit a sick call request seeking further examination. (Doc. 1, p. 25).

Kama claims that he submitted several sick call requests complaining of pain, limited mobility, and an inability to bend or stand up straight. (Doc. 1, p. 25). Kama reports that he was not seen regarding his pain complaints for 21 days. (Doc. 1, p. 26). Kama explains that he spoke to Defendant Alvarez on three different occasions about his back pain, but that Defendant Alvarez tried to convince him that the pain was caused by degenerative discogenic disease. (Doc. 1, p. 26). Kama insists that he was not suffering from any effects of degenerative discogenic disease before his fall on January 15, 2014. (Doc. 1, p. 26). Kama reports that on several occasions he asked Defendants Acosta and Alvarez for further examinations like "Cat Scans" or MRIs. (Doc. 1, p. 26).

Due to lingering back pain, Kama initiated the administrative remedy process on March 18, 2014. (Doc. 1, p. 29). On March 20, 2014, Defendant Acosta denied Kama's administrative remedy. (Doc. 1, p. 29). Defendant Acosta explained that Kama had been examined and received x-rays on January 16, 2014. (Doc. 1, p. 29). Defendant Acosta relays that those x-rays showed no changes from x-rays taken on Kama's back in July 2013. (Doc. 1, p. 29). Defendant Acosta recounts that Kama was examined by medical staff for back pain complaints on February 7, 2014, and February 19, 2014. (Doc. 1, p. 29). Defendant Acosta notes that Kama was seen by a clinician on March 8, 2014, who explained to Kama that his x-rays indicate moderate degenerative discogenic disease, moderate disc space narrowing at L4-L5, and metallic ballistic fragments at L4-L5 and L5-S1. (Doc. 1, p. 29). Kama's pain medication was assessed or adjusted during each examination. (Doc. 1, p. 29).

6

Not satisfied with that result, Kama submitted another administrative remedy request on March 22, 2014. (Doc. 1, p. 31). This time Defendant Batts approved the request and Kama was scheduled for an appointment with an orthopedic surgeon. (Doc. 1, p. 31). Kama was transferred to USP Lewisburg in Pennsylvania in the months following Defendant Batts' decision. Kama continued the administrative appeals process while incarcerated at USP Lewisburg.

## C.  Claim Three: FTCA claim for injured right hand and wrist

On December 16, 2014, Kama submitted a claim pursuant to the Federal Tort Claims Act ("FTCA") to the Federal Bureau of Prisons ("BOP") regarding the injuries he suffered to his right hand and wrist.[6] (Doc. 1, p. 44). Kama seeks $50,000 in damages as a result of the lingering pain, swelling, and tenderness stemming from the fractured bones in his right hand. (Doc. 1, p. 44). Kama asserts that he was aggrieved by the 32-day delay in medical treatment following his hand injury on August 7, 2013. (Doc. 1, p. 44). Administrative settlement of Kama's FTCA was denied on July 8, 2014. (Doc. 1, p. 47). The denial noted, "There is no evidence to indicate you sustained any injuries caused by the negligent or wrongful act or omission of any United States employee acting within the scope of employment. BOP medical staff provided timely and appropriate medical care for your . . . fractures." (Doc. 1, p. 48).

---

[6] "The FTCA confers on federal courts exclusive jurisdiction of civil actions on claims against the United States for money damages for personal injury caused by the negligent or wrongful acts or omissions of any federal employee while acting within the scope of his office or employment. 28 U.S.C. § 1346(b)(1). FTCA claims may be brought against only the United States, and not the agencies or employees of the United States. *See* 28 U.S.C. §§ 2671, 2679." *Esquivel-Solis v. United States*, 472 F. App'x 338, 339 (5th Cir. 2012) (unpublished).

## II.   LEGAL STANDARD

In both *in forma pauperis* proceedings and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim upon which relief may be granted. These provisions apply to this *in forma pauperis* prisoner civil rights action. *See Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States,* 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). "A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Taylor v. Gunnels,* No. CV-H-09-3068, 2009 WL 3247175, at *2 (S.D. Tex. Sept. 25, 2009) (citing *Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir.2002)). The Court is authorized *sua sponte* to test whether the case is frivolous or malicious even before the service of process or before a defendant is required to file an answer. *Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault,* 525 F.2d 886, 892 (5th Cir. 1976) (discussing the use of questionnaires to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d at 181-82 (discussing the use of an evidentiary hearing).

8

Courts liberally construe complaints filed by prisoners proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Estelle v. Gamble*, 429 U.S. 97 (1976). This Court has reviewed Kama's arguments and assertions in his complaint, supplemented by his answers to the questionnaire, to determine whether his allegations establish grounds for dismissal or present cognizable claims, which require the Defendants to answer and the case to proceed.

### III.   ANALYSIS

Kama filed his complaint under 42 U.S.C. § 1983 against employees of FCI Big Spring. Section 1983, however, only provides a federal cause of action for damages against defendants acting under color of state law. *E.g., Calhoun v. Hargrove,* 312 F.3d 730, 734 (5th Cir. 2002). FCI Big Spring is a federal prison facility, thus, employees of FCI Big Spring are not state actors. Because there is no conduct that could reasonably be attributed to a state actor, Kama fails to allege an essential element of a § 1983 claim. But, since courts liberally construe *pro se* complaints, when a federal prisoner alleges constitutional violations, courts have consistently construed the actions as brought pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389-98 (1971). *Bivens* claims, unlike § 1983 claims, provide for a cause of action for constitutional violations committed by federal officers under color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

Kama claims that FCI Big Spring Warden Myron Batts, Health Services Administrator Acosta, Assistant Health Services Administrator Hanson, and Mid-level Provider Alvarez were deliberately indifferent to his medical needs. (Doc. 1, p. 4). Kama contends that their actions—at least in reference to his injured right hand—were in retaliation for their belief that Kama instigated a race riot at FCI Big Spring on August 7, 2013. (Doc. 11, p. 6).  Kama now seeks

monetary damages in the amount of $12,050,000. As such, Kama's § 1983 complaint will be construed by the Court as a *Bivens* action. *See id.*

A prison official may violate the Eighth Amendment if he is deliberately indifferent to an inmate's serious medical needs. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). However, allegations of negligent diagnoses or inadvertent failure to provide adequate medical care do not amount to deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In fact,

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Rather, to meet the extremely high standard in a deliberate indifference claim, the plaintiff must demonstrate that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This requires the inmate to allege that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). This standard does not require that government officials comply with "an optimal standard of care." *Kitchen v. Dall. Cnty.*, 759 F.3d 468, 482 (5th Cir. 2014) (quoting *Easter v. Powell*, 467 F.3d 459, 463–64 (5th

Cir. 2006)). Instead, officials are obligated "not to disregard any substantial health risk about which government officials are actually aware." *Kitchen*, 759 F.3d at 482. However, a delay in medical care can rise to the level of a constitutional violation, but only if the deliberate indifference results in substantial harm. *Easter*, 467 F.3d at 463. Finally, "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995).

### A.  Claim One: Injured right hand and wrist

As noted, Kama claims that he was assaulted by other inmates as part of a race riot at FCI Big Spring on August 7, 2013. (Doc. 1, p. 6). As a result of the riot, Kama claims that the prison was segregated by race and "locked down." (Doc. 1, p. 6). Kama relays that this meant "no inmate movement" for several weeks. (Doc. 1, p. 6). Kama reports that his right hand and wrist were severely injured during the riot. (Doc. 1, p. 6).

Subsequently, Kama claims that he made no less than 12 requests for someone to exam his injured right hand and wrist beginning on August 8, 2013, and ending on September 9, 2013. (Doc. 1, p. 10-13). On September 9, 2013, when his pleas for medical attention were finally heeded, Kama was found to have two fractures in his fingers. (Doc. 1, p. 15).

Kama claims that he submitted written sick call requests on August 13th and August 16th with no success. (Doc. 1, p, 11). Further, Kama advises that he submitted a third written sick call request directly to Mrs. Wilborne on August 31st. (Doc. 1, p. 12). In a letter denying Kama's administrative remedy appeal, Defendant Batts contends that Kama only submitted two written sick call requests, on August 30th and September 5th. (Doc. 1, p. 15). Kama explains that his other sick call requests were submitted during the time period when the prison was on lockdown,

thus, "normal sick-call procedure could not be followed." (Doc. 11, p. 6). In other words, Kama seems to reason that the missing sick call requests were not documented due to the lockdown situation following the riot.

Although he requested to see an orthopedic specialist, Kama's hand injuries were ultimately treated with a splint and pain medication. Nevertheless, Kama claims that his hand is permanently disfigured as a result of the improper medical care that he received and he seeks damages in the amount of $6,000,000 on claim one. In his complaint, Kama argues that the Defendants should be held liable for neglect, malpractice, maltreatment, and medical indifference. (Doc. 1, p. 4). However, claims of negligent diagnoses and inadvertent failure to provide adequate medical care do not amount to deliberate indifference. *Wilson v. Seiter*, 501 U.S. at 297. As such, Kama's claims for neglect, malpractice, and maltreatment are not cognizable as Eighth Amendment constitutional violations. *See id.*

In order to demonstrate deliberate indifference to his serious medical needs, Kama must show that the Defendants "[knew] of and disregard[ed] an excessive risk to [his] health or safety." *Farmer*, 511 U.S. at 837. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* In answering the Court's questionnaire, Kama admits that he has no evidence that Defendant Batts, Defendant Acosta, Defendant Hanson, or Defendant Alvarez were aware of his hand injuries prior to his administrative remedy appeal. (Doc. 11, p. 6-8). But, Kama claims that their positions as warden, health services administrator, assistant health services administrator, and mid-level provider, respectively, obligated them to provide timely and adequate medical care to the inmates under their supervision. (Doc. 11, p. 6-8). Further, Kama insists that Defendant

12

Alvarez was the first employee of FCI Big Spring that he reported his injury to on August 8, 2013. (Doc. 11, p. 7).

While Kama cannot offer proof that the Defendants knew of and disregarded his injuries, the law allows Kama to make such a showing through allegations that the Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. The Court finds that Kama has alleged sufficient facts to satisfy the *Domino* standard. *See id.*

First, Kama details the dates, circumstances, and personnel to which he reported his right hand injury. (Doc. 1, p. 10-14). Next, Kama alleges that each time, prior to September 9th, the prison official either refused to treat him or ignored his complaints. Also, it was ultimately discovered—some 32 days after his first report—that Kama had suffered two fractured fingers as a result of his involvement in the riot at FCI Big Spring. (Doc. 1, p. 15). Finally, although prison officials claim that Kama did not report his hand injury until August 30th, the Court finds it doubtful that a person suffering from bone fractures in his hand would wait 23 days before submitting a sick call request regarding the injury.

Accordingly, this Court recommends that upon transfer back to the District Judge, the Defendants be ordered to answer claim one of Kama's complaint alleging deliberate indifference to his serious medical needs.

## B.  Claim Two: Lower back injury

In claim two of his complaint, Kama brings a *Bivens* action against the Defendants alleging deliberate indifference to his serious medical needs following a back injury that he

sustained upon falling from a faulty seat inside his cell.[7] (Doc. 1, p. 25). As noted, Kama claims that he fell from the faulty seat on January 15, 2014, and that prison officials were alerted to the defect on December 19, 2013. (Doc. 1, p, 25). Kama insists that the fall resulted in lower back pain, numbness, and loss of feeling in his legs. (Doc. 1, p. 26). The crux on Kama's complaint regarding this incident is the length of time between his first examination following the injury and any subsequent treatment. (Doc. 1, p. 26). Kama reports that following the initial exam on January 16, 2014, he was not examined again for a span of 21 days. (Doc. 1, p. 26).

Kama's timeline appears to mirror the information provided in Defendant Acosta's denial of Kama's administrative remedy appeal. Apparently, Kama's had a preliminary examination on January 15, 2014, just after the fall. (Doc. 1, p. 29). X-rays were taken of Kama's back on January 16, 2014. (Doc. 1, p. 29). These x-rays revealed no change when compared to x-rays of Kama's back taken on July 13, 2013. (Doc. 1, p. 29). Kama was prescribed pain medication at this time. (Doc. 1, p. 29). On February 7, 2014, Kama was examined by a mid-level provider who prescribed him a more effective pain medication. (Doc. 1, p. 29). On February 19, 2014, Kama saw the mid-level provider again and was informed of the x-ray results. (Doc. 1, p. 29). During this visit, Kama was told to continue taking his pain medication as prescribed. (Doc. 1, p. 29). On March 8, 2014, a clinician explained to Kama that his x-rays revealed moderate degenerative discogenic disease, moderate disc spacing at L4-L5, and metallic ballistic fragments at L4-L5 and L5-S1. (Doc. 1, p. 29). The clinician informed Kama that his request to see an orthopedic surgeon had been submitted. (Doc. 1, p. 31).

---

[7] It should be noted that Kama's back injury claim is brought solely under *Bivens*. He does not allege an FTCA premises liability action regarding the faulty seat. As such, the Court will only address the Defendants' actions subsequent to his injury.

On May 6, 2014, the medical officer at the FCI Big Spring Chronic Care Clinic performed a complete physical exam on Kama. (Doc. 1, p. 33). The medical officer informed Kama that the only way to repair his spine was to remove the ballistic fragments in his spinal canal at the L5-S1 region. (Doc. 1, p. 33). Kama was informed that there was a high risk that the surgery would result in a cerebrospinal fluid leak, a condition which causes chronic lower back pain. (Doc. 1, p. 33). As such, the medical officer did not recommend surgery at that time. (Doc. 1, p. 33). Instead, the medical officer recommended a course of continued pain medications to alleviate Kama's discomfort. (Doc. 1, p. 33).

As noted, Kama must show that the Defendants knew of and disregarded an excessive risk to his health or safety in order to prove deliberate indifference. *See Farmer*, 511 U.S. at 837. Prison officials are obligated "not to disregard any substantial health risk about which government officials are actually aware." *Kitchen*, 759 F.3d at 482. But, this standard does not require that government officials comply with "an optimal standard of care." *Id.* (quoting *Easter*, 467 F.3d at 463–64.). Upon consideration, the Court finds that the Defendants took reasonable steps to address Kama's back injury. Kama received a timely exam, pain medication, x-rays, and consultation with an orthopedic specialist. The fact that Kama's pain lingers does not negate the fact that he received prompt, reasonable medication attention.

Accordingly, the Court recommends that claim two of Kama's complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

15

**C.  Claim Three: FTCA claim for injured right hand and wrist**

Finally, Kama seeks to appeal the administrative denial of his FTCA claim seeking damages for the delayed medical care for his injured right hand.

The United States is the only appropriate defendant in FTCA claims. *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) ("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a[n] [FTCA] suit. . . . [T]he courts have consistently held that an agency or government employee cannot be sued *eo nomine* under the [FTCA]."); *Carr v. Veterans Admin.*, 522 F.2d 1355, 1356 (5th Cir. 1975); *Esquivel-Solis v. United States*, 472 F. App'x 338, 339 (5th Cir. 2012) ("FTCA claims may be brought against only the United States, and not the agencies or employees of the United States."); Thus, when an FTCA action is improperly brought against a United States agency or its employees instead of the United States as a sovereign, the claims must be dismissed for want of jurisdiction. *See Galvin*, 860 F.2d at 183; *McBarron v. Fed. Bureau of Prisons*, 332 F. App'x 961, 964-65 (5th Cir. 2009) ("we find no error in the dismissal of [plaintiff's] FTCA claims against the Bureau of Prisons because such claims may not be brought against a federal agency, and a plaintiff instead must name the United States as the sole defendant."). Kama failed to name the United States as a party in this suit. Consequently, his FTCA claim cannot proceed.

## IV.    CONCLUSION

Accordingly, this Court **RECOMMENDS** that upon transfer back to the District Judge:

1) Defendants be ORDERED to answer claim one of Kama's complaint alleging deliberate indifference to his serious medical needs regarding his injured right hand;

16

2) Claim two of Kama's complaint be DISMISSED as frivolous;

3) Claim three of Kama's complaint be DISMISSED for failure to state a claim upon which relief can be granted.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

DATED November _/3_ , 2015.

_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**

17